UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT THORPE,

        Plaintiff,

v.

CLAYTON TOWNSHIP, OFFICER
CHARLES MELKI, OFFICER LYNN
SABIN, and STEVEN IAMARINO, in their
official and individual capacities, jointly
and severally,

        Defendants.
_____/

Case No. 07-13408

Honorable Sean F. Cox
United States District Judge

OPINION & ORDER

This is a civil rights action under 42 U.S.C. § 1983, brought by Plaintiff Pat Thorpe ("Thorpe") against two police officers, the municipality that employs them, and the city attorney for the municipality. The matter is currently before the Court on Officer Charles Melki's ("Melki'), Officer Lynn Sabin's ("Sabin") and Clayton Township's (collectively, "the Defendants") Motion for Summary Judgment [Doc. No. 29]. Defendant Steven Imarino is not a party to this motion. The parties have fully briefed the issues, and a hearing was held Thursday, January 8, 2009 at 3:00 pm. For the reasons below, the Court **GRANTS** the Defendants' Motion for Summary Judgment on Thorpe's Due Process [Count III], Municipal Liability [Count IV], and Malicious Prosecution [Count ] claims, and **DENIES** Defendants' Motion on Thorpe's First Amendment [Count I] and Fourth Amendment [Count II] claims.

1

I.  BACKGROUND

This is a civil rights action under 42 U.S.C. § 1983, filed by Thorpe on August 14, 2007. Thorpe was concerned for the well-being of her long-time friend, Mrs. Polly Spencer ("Spencer"), who was allegedly being abused by her husband. At Spencer's request, Thorpe helped get Spencer out of her marital home, and into a safe house for victims of domestic violence. Thorpe was given a business card with a telephone number in case someone needed to contact Spencer. Thorpe stayed one night at the shelter with Spencer, returning home August 15, 2004.

In the afternoon of August 15, 2004, Melki received a dispatch call about a suspected domestic violence incident involving Spencer, and that Spencer may be at the Thorpe residence. Melki knocked on Thorpe's door, after which the parties dispute what happened between them.

According to Thorpe, when she opened the door there wasn't anyone on her front porch. When she exited her house via the porch, Thorpe found Melki in her backyard. Thorpe identified herself to Melki, and asked him what he was doing, to which he responded that he was "looking for a fresh grave." When Melki asked Thorpe what her connection to Spencer was, Thorpe informed him that Spencer was her best friend, and offered to provide Melki with the card she had been given from the shelter.

According to Thorpe, Melki refused to accept the card with the telephone number, and instead demanded to know the location of the safe house. Thorpe explained to Melki that she was told not to give out the safe house's location, but again offered to retrieve the card with the telephone number from inside her residence. About this time, officer Sabin arrived on the scene.

When Thorpe turned to go inside the house, Melki rushed at Thorpe, twisting Thorpe's arm behind her back in a painful manner in an attempt to handcuff Thorpe. Thorpe reacted in pain, telling Melki she had injuries to her back and neck, and pleaded with him to handcuff her in front of her body. Thorpe was then placed in Melki's squad car, while Melki went into Thorpe's home to determine whether Spencer was inside. When he returned, Melki allowed Thorpe to go into the home and retrieve the card, which she did willingly.

The Defendants tell a very different story about the events of August 15, 2004. Melki alleges that Thorpe came out immediately to the front door, closed it behind her, and asked why Melki was there. When Melki informed Thorpe of the request for information on the welfare of Spencer, Thorpe became irate, accusing him of being a "woman hater" and that she thought he was working on behalf of Spencer's abusive husband.

Melki alleges that he asked Thorpe to provide him with a phone number so that he could contact Spencer and verify her welfare, which Thorpe refused. Thorpe yelled at Melki for approximately five to ten minutes while standing in her front yard, then aggressively came toward Melki while pointing her finger at him, causing him to back away from her. In light of Thorpe's aggressive and unexplained behavior, Melki made the decision to place Thorpe under arrest for obstructing his investigation into Spencer's welfare. While Melki was attempting to handcuff her, Thorpe hit him in the chest, pushed his hand away, and attempted to retreat back into her house.

Melki alleges that Sabin arrived on the scene about this time, at which time Sabin assisted Melki in handcuffing Thorpe. When told of Thorpe's prior injuries, the officers re-cuffed her in front of her body. At that point, Melki alleges he was concerned Spencer may be

inside Thorpe's home, and so he made the decision to briefly go inside in a "community caretaker" role to verify Spencer's welfare.

Neither party disputes the events after the August 15, 2004 arrest. Thorpe was charged with Obstructing and Disorderly Person, and jury trial was held in the 67th District Court of Michigan from the 24th to the 29th of March, 2005, resulting in a guilty verdict against Thorpe. Thorpe's convictions were reversed on a motion for new trial on grounds of ineffective assistance of counsel, after which Iamarino elected not to retry Thorpe.

Thorpe filed her § 1983 complaint on August 14, 2007. In it, she alleges five causes of action: violations of her First Amendment rights by Melki and Sabin [Count I], violations of her Fourth Amendment rights by Melki and Sabin [Count II], violations of her Due Process rights against Melki and Sabin [Count III], a *Monell* claim against Clayton Township [Count IV],and Malicious Prosecution under state law against Melki, Sabin, and Iamarino [Count V][1].

During oral argument on January 8, 2009, counsel for Thorpe conceded that Thorpe's claim for Malicious Prosecution was brought against Melki and Sabin in error. As such, the Court **DISMISSES** Count IV with respect to Melki and Sabin.

II. STANDARD OF REVIEW

---

[1] The Court notes the typographical mistake in roman numerals designating Plaintiff's causes of actions in the Complaint. The fourth of Plaintiff's five counts, the *Monell* claim, was mistakenly labeled "COUNT VI." [Pl.'s Complaint, Doc. No. 1, p.9]. Similarly, the fifth and final count, for malicious prosecution, was mistakenly labeled "COUNT VI." *Id*. at 10. To be clear, for purposes of this motion to the Court will properly refer to the *Monell* claim as Count IV, and the malicious prosecution claim as Count V.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)).

## III.  ANALYSIS

Thorpe is unable to demonstrate a genuine issue of material fact for trial on her claims for violation of Due Process [Count III] against Melki and Sabin, and for the *Monell* claim [Count IV] against Clayton Township. As such, the Court **GRANTS** Summary Judgment for the Defendants on Counts III and IV. As fact questions remain with respect to Plaintiff's causes of action under the First Amendment [Count I] and Fourth Amendment [Count II], the Court **DENIES** Summary Judgment on those Counts, as well as on the Defendants' affirmative defense of qualified immunity.

### A.  Thorpe's Claim for Violation of Due Process [Count III]

Thorpe's Complaint alleges a violation of her Due Process rights. [Doc. No. 1, ¶58]. The

Defendants' Motion for Summary Judgment argues that Thorpe's Due Process claim addresses conduct which falls under her First and Fourth Amendment Claims. [Doc. No. 29, p.15].

To make a showing of excessive force under the Fourteenth Amendment, a "substantially higher hurdle" must be overcome compared to bringing the same claim under the Fourth Amendment. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001). "The substantive due process rights of the Fourteenth Amendment protect citizens from the arbitrary exercise of governmental power...[t]he test...to determine when governmental conduct reaches this threshold is to ask whether the alleged conduct 'shocks the conscience.'" *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Whether particular conduct shocks the conscience depends on the facts of the case:

> ... in situations where the implicated government actors are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, their actions will be deemed conscience-shocking if they were taken with deliberate indifference towards the plaintiff's federally protected rights. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation, public servants' reflexive actions 'shock the conscience' only if they involved force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'

*Id.*

Assuming the events of August 15, 2004 went exactly as Thorpe claims they did, and drawing all possible inferences in Thorpe's favor, Melki had at least some time to consider his actions before he twisted Thorpe's arm behind her back and attempted to handcuff her. The question then becomes whether Melki's actions were "taken with deliberate indifference." *Darrah*, 255 F.3d at 306. "Deliberate indifference has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state 'official knows of and

disregards an excessive risk to the victim's health or safety.'" *Ewolski v. City of Brunswick*, 287 F.3d 492, 513 (6th Cir. 2002)(citation omitted). "Thus, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "Having drawn the inference, the official must act or fail to act in a manner demonstrating 'reckless or callous indifference' toward the individual's rights." *Id*.

In the instant case, Defendant Melki used force to effectuate the arrest of Thorpe; he took her arm, allegedly twisting it in the process, in an effort to restrain Thorpe's arm behind her back so that he could handcuff her. Though it is undisputed that Thorpe had prior injuries to her neck and back, it is also undisputed that Melki did not know about these injuries before Thorpe was handcuffed. When Thorpe complained about being handcuffed behind her back, she was immediately cuffed in front of her body. Given these facts, even assuming the harm suffered by Thorpe was "serious" it cannot be said that Melki was "aware of the fact" that, by cuffing Thorpe behind her back, "a substantial risk" of such harm existed. Absent knowledge by Melki of Thorpe's prior injuries, Melki used only that force which the Supreme Court allows police officers to use in the course of making an otherwise valid arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("...the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

Even if Thorpe could make the required showing of deliberate indifference by Melki, her Due Process Claim would still warrant dismissal. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be

the guide for analyzing those claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). In their holding, the *Albright* Court referenced *Graham v. Connor*, 490 U.S. 386, 394 (1989), which specifically precluded plaintiffs like Thorpe from bringing Due Process claims:

> Today we make explicit what was implicit in [*Tennessee v.*] *Garner*'s [471 U.S. 1 (1985)] analysis, and hold that *all* claims that law enforcement officers have used excessive force - deadly or not - in the course or an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

*Graham* at 395 (emphasis in original).

Here, Thorpe has alleged violations of her First and Fourth Amendment rights, and no part of her causes of action allege any constitutional violations not embodied within those amendments. For these reasons, the Defendants' Motion for Summary Judgement on Thorpe's Due Process Claim [Count III] is **GRANTED**.

### B.  Thorpe's *Monell* Claim Against Clayton Township [Count IV]

Thorpe's Complaint brings a § 1983 claim against Defendant Clayton Township. [Doc. No. 1, ¶¶60-66]. A municipality "cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir.2000); *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). In *Monell*, the Supreme Court held that a municipality can, however, be found liable under § 1983 where a policy of the municipality causes the constitutional violation at issue. "It is when the execution of a government's policy or custom...inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Additionally, Thorpe must show that Clayton

Township was the "moving force" behind the violation of Thorpe's constitutional rights, and must show a causal link between the Township's actions and the deprivation of Thorpe's rights. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).

No evidence has been proffered by Thorpe to show that a policy or custom of Clayton Township was the "moving force" which caused her alleged deprivation of rights. Absent such a showing, Thorpe cannot meet her evidentiary burden, and the Defendants' Motion for Summary Judgement on Thorpe's *Monell* claim [Count IV] is therefore **GRANTED**.

### C. Thorpe's First Amendment Claim [Count I]

Thorpe's Complaint alleges a violation of her First Amendment right not to speak. [Doc. No. 1, ¶¶46-49]. Thorpe argues that *Davis v. Mississippi*, 394 U.S. 721, 727, n.6 (1969) gives her an affirmative right not to be compelled to answer questions posed by a police officer. [Doc. No. 34, p.11]. Thorpe feels her reluctance to answer questions about the location of Spencer was the only reason she was arrested on August 15, 2004, and that her arrest by Melki and Sabin was solely in retaliation for her refusal to speak. *Id.* at 12-14.

Defendants direct this Court to the recent decision in *Hartman v. Moore*, 547 U.S. 250 (2006), in which the Supreme Court held plaintiffs in First Amendment retaliation claims must allege and prove the absence of probable cause in order to establish a prima facie case. [Doc. No. 29, p.7]. "Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added costs, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven." *Hartman*, 547 U.S. at 265-66.

Probable cause to arrest exists if reasonably trustworthy facts and circumstances known to the police officer were sufficient for a prudent man to believe the arrested individual had committed or was committing an offense. *Diamond v. Howe*, 288 F.3d 932, 936 (6th Cir.2002). Probable cause is assessed from the perspective of a reasonable officer on the scene, rather than with the vision of hindsight. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir.2001).

Genuine issues of material fact remain about what happened between the parties on August 15, 2004. As explained above, Thorpe claims she complied with Melki's requests to the best of her abilities. Melki and Sabin, on the other hand, claim that Thorpe was the aggressor in the confrontation, and that her belligerent actions and physical threats to the officers justified their using necessary physical force to arrest her. Taken in the light most favorable to Thorpe, the non-moving party, there is a question of fact whether Melki and Sabin had probable cause to arrest Thorpe. As such, the Defendants' Summary Judgement Motion on Count I is **DENIED**.

### D. Thorpe's Fourth Amendment Claim [Count II]

Thorpe's Complaint alleges a violation of her Fourth Amendment right to be free from unreasonable searches and seizures. [Doc. No. 1, ¶¶51-55]. Thorpe alleges: 1) Melki and Sabin used excessive force against her; 2) she was arrested and held without probable cause; and 3) she was subjected to a warrantless search of her property without her consent. Defendants refute each of these specific charges and move for summary judgement. As explained above, genuine issues of material fact remain which prevent this court from granting summary judgement on Thorpe's Fourth Amendment claims.

Claims regarding police officers' use of excessive force in the course of an arrest are

governed by the Fourth Amendment. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir.2002). Under the Fourth Amendment, officers may only use such force as is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In this case, both parties dispute not only the facts surrounding how Thorpe came to be arrested, but in the level of force which was used to effectuate that arrest. Taking the facts in the light most favorable to Thorpe, the non-moving party, there are genuine issues of material fact regarding whether the force used by Melki and Sabin was excessive.

To comply with the requirements of the Fourth Amendment, an arrest must be supported by probable cause to believe an individual has committed or is committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In this case, both parties directly contest the events leading up to Thorpe's arrest. These contested events were the same ones which Melki and Sabin rely upon in support of their argument they had probable cause to arrest Thorpe. Taking the facts in the light most favorable to Thorpe, the non-moving party, there are genuine issues of material fact regarding whether Thorpe's arrest was supported by probable cause.

"Searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Melki and Sabin argue that they were entitled to search for Spencer under the "community caretaker" exception laid out in *United States v. Williams*, 354 F.3d 497, 508 (6th Cir.2003), or under the "exigent circumstances" exception in *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir.1994). Both of these

11

exceptions hinge upon the state of mind of the officers at the scene on August 15, 2004. As fact questions remain regarding the events leading up to Thorpe's arrest, there is a question of fact whether the actions of Melki and Sabin under those contested circumstances were reasonable. Taking the facts in the light most favorable to Thorpe, the non-moving party, there are genuine issues of material fact regarding whether the search of Thorpe's property without her consent was reasonable under the circumstances.

For these reasons Summary Judgement on Thorpe's Fourth Amendment claims is **DENIED**.

### E. Melki's and Sabin's Qualified Immunity Defense

Defendants Melki and Sabin argue their actions in this case entitle them to qualified immunity from suit. [Doc. No. 29, pp.15-18]. Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit, not just from an ultimate assessment of damages." *Archie v. Lanier*, 95 F.3d 438, 440 (6th Cir.1996). This immunity shields officers "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Myers v. Potter*, 442 F.3d 347, 352 (6th Cir.2005), quoting *Anderson v. Creighton*, 422 U.S. 635, 638 (1987).

Whether qualified immunity attaches is a question of law for this Court. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988). In evaluating a qualified immunity defense, the Court

engages in a two-part analysis: 1) whether, on the facts alleged, the official violated a constitutional or statutory right; and if so, 2) whether the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If Thorpe does not establish the required showing in the first prong, the inquiry ends and Melki and Sabin are entitled to immunity. *See Midkiff v. Adams County Reg. Water Dist.*, 409 F.3d 758, 771 (6th Cir.2005).

As explained above regarding Thorpe's First and Fourth Amendment claims, genuine issues of material fact remain about what happened between Thorpe, Melki and Sabin on August 15, 2004. Judged in the light most favorable to Thorpe, the non-moving party, there is a question of fact whether the actions of Melki and Sabin on August 15, 2004 place them outside the protection of qualified immunity, and as such their motion for Summary Judgement on this ground is **DENIED**.

### IV.  CONCLUSION

For the reasons explained above, the Court **DISMISSES** Count V with respect to Defendants Melki and Sabin pursuant to agreement by the parties. Furthermore, the Court **GRANTS** Summary Judgment on Counts III and IV, and **DISMISSES** those Counts. Finally, the Court **DENIES** Summary Judgment on Counts I and II.

**IT IS SO ORDERED**.

s/Sean F. Cox  
Sean F. Cox  
United States District Judge

Dated:  January 29, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT THORPE,            Case No. 07-13408

    Plaintiff,            Honorable Sean F. Cox
                                     United States District Judge
v.

CLAYTON TOWNSHIP, OFFICER
CHARLES MELKI, OFFICER LYNN
SABIN, and STEVEN IAMARINO, in their
official and individual capacities, jointly
and severally,

    Defendants.
_____/

## PROOF OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel of record on January 29, 2009, by electronic and/or ordinary mail.

                               s/Jennifer Hernandez
                               Case Manager